## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CV-20457-ALTMAN/Elfenbein

**ELDIS JIMENEZ**,

      Plaintiff,

v.

**FRANK BISIGNANO**,[1]
**COMMISSIONER OF SOCIAL SECURITY**,

      Defendant.

_____/

## REPORT AND RECOMMENDATION ON
## CROSS-MOTIONS FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court on Plaintiff Eldis Jimenez's ("Plaintiff") Motion for

Summary Judgment, ECF No. [12].  Defendant Frank Bisignano, Acting Commissioner of Social

Security Administration ("Defendant"), filed a Motion for Summary Judgment and Opposition to

Plaintiff's Motion for Summary Judgment with Supporting Memorandum of Law (the

"Response"), ECF No. [15].  The Honorable Roy K. Altman, United States District Judge, referred

this matter to me "for a Report and Recommendations on any dispositive matters."  *See* ECF No.

[10] at ¶1.  For the reasons explained below, I **RESPECTFULLY RECOMMEND** that Plaintiff's

Motion for Summary Judgment, **ECF No. [12]**, be **DENIED**, Defendant's Motion for Summary

Judgment, **ECF No. [15]**, be **GRANTED,** and the Administrative Law Judge's Decision ("ALJ's

Decision") is **AFFIRMED**.

---

[1] Frank Bisignano became the Commissioner of the Social Security Administration on May 7, 2025.
Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as
the Defendant in this suit.

## I.      BACKGROUND

On December 15, 2020, Plaintiff applied for disability insurance benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq.*, alleging disability beginning March 23, 2020 based on multiple sclerosis ("MS").  *See* ECF No. [11] at 64-65.[2]  The Social Security Administration ("SSA") initially denied Plaintiff's disability application, and did so again upon reconsideration.  *See id.* at 28, 80-86.  Thereafter, Plaintiff requested a hearing, which an Administrative Law Judge ("ALJ") held on August 8, 2023.  *See id*. at 28.  The ALJ issued a partially favorable decision on October 24, 2023, finding Plaintiff was disabled beginning on August 6, 2023, but not disabled from the alleged onset date of March 23, 2020.  *See id.* at 29.  The Appeals Council denied Plaintiff's request for review on January 16, 2025, thus making the ALJ's decision final.  *See id.* at 6-13.

## II.      LEGAL STANDARDS

### A.      <u>Judicial Review of Claims under the Act</u>

A court's review of an ALJ's decision is limited to assessing whether there is substantial evidence in the record to support the ALJ's findings and whether the ALJ applied the correct legal standards in reaching his or her determination.  *See Biestek v. Berryhill*, 587 U.S. 97, 104 (2019).  Moreover, the Court will affirm an ALJ's decision so long as substantial evidence supports it.  *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) ("If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." (quotation marks omitted)).

The standard for substantial evidence requires more than a mere scintilla and necessitates relevant evidence that a reasonable person would accept as sufficient to uphold a conclusion.  *See*

---

[2] The references to page numbers from the record refer to the CM-ECF page numbers.

*Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (finding that substantial evidence is "more than a scintilla, but less than a preponderance").  Courts "may not decide the facts anew, reweigh the evidence, or substitute [their] judgment for that of the [ALJ]."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted).  Even if the evidence leans against the ALJ's decision, the court must uphold it if substantial evidence supports it.  *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) ("If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." (citation omitted)); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing 42 U.S.C. § 405(g)).

## B.      Regulatory Framework for Weighing Medical Opinions

Social Security regulations require the ALJ to consider and evaluate all evidence, including medical opinions.  20 C.F.R. § 404.1513(a).  Medical opinions are statements "from a medical source about what [the claimant] can still do despite [his] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions" in his ability to "perform physical demands of work activities"; "perform mental demands of work activities"; "perform other demands of work, such as seeing, hearing, or using other senses"; and "adapt to environmental conditions, such as temperature extremes or fumes." *Id.* § 404.1513(a)(2).

When evaluating "medical opinions and prior administrative medical findings," the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from" a claimant's "medical sources," *id.* § 404.1520c(a), but the ALJ "will articulate in" a "determination or decision how persuasive" she or he finds "all of the medical opinions and all of the prior administrative medical findings in" the claimant's "case record," *id.* § 404.1520c(b). In doing so, the ALJ

primarily considers four factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant;[3] and (4) specialization.  *Id.* § 404.1520c(c)(1)–(4); *see also Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 897 (11th Cir. 2022) (Section 404.1520c(c) "provides several factors for determining what weight to give a claimant's proffered medical opinions.  Those factors include the supportability of the medical opinion, its consistency with other record evidence, the physician's relationship with the claimant, [and] the physician's specialty."). The ALJ also considers "other factors that tend to support or contradict a medical opinion or prior administrative medical finding," including "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of" the SSA's "disability program's policies and evidentiary requirements."  20 C.F.R. § 404.1520c(c)(5); *see also Harner*, 38 F.4th at 897 (noting the ALJ considers "other relevant information, such as the physician's familiarity with the other record evidence and with making a claim for disability").

Of these factors, supportability and consistency "are the most important" when determining the persuasiveness of a "medical source's medical opinions or prior administrative medical findings."  *Id.* § 404.1520c(b)(2).  Supportability refers to how relevant "the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s)" — the "more relevant" they are, the "more persuasive" they will be.  *Id.* § 404.1520c(c)(1).  Consistency refers to how consistent "a

---

[3] The relationship with the claimant factor "combines consideration of" the "length of time a medical source has treated" the claimant and the "frequency" of visits, both of which "may help demonstrate whether the medical source has a longitudinal understanding of" the impairments.  *See* 20 C.F.R. § 404.1520c(c)(3). This factor also considers the "purpose for treatment" and the "kinds and extent of examinations and testing the medical source has performed or ordered from specialists or independent laboratories," both of which "may help demonstrate the level of knowledge the medical source has of" the impairments.  *Id.* § 404.1520c(c)(3).  Finally, this factor considers whether the medical source has examined the claimant, which may give the medical source "a better understanding of" the impairments "than if the medical source only reviews evidence in" the claimant's "folder."  *Id.* § 404.1520c(c)(3).

medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim" — the "more consistent" they are, the "more persuasive" they will be. *Id.* § 404.1520c(c)(2). Because they are the most important factors, the ALJ "will explain how" she "considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in" his or her "determination or decision." *Id.* § 404.1520c(b)(2). And the ALJ "may, but [is] not required to, explain how" he or she considered the other factors. *See id.*; *Gary-Lowe v. O'Malley*, No. 22-CV-22379-JB, 2024 WL 1178658, at *5 (S.D. Fla. Feb. 12, 2024). "The ALJ need not discuss every piece of evidence if the ALJ's decision is not a broad rejection and there is enough for us to conclude that the ALJ considered the claimant's medical condition as a whole." *Raper v. Commr. of Soc. Sec.*, 89 F.4th 1261, 1277 (11th Cir. 2024), *cert. denied sub nom.* 145 S. Ct. 984 (2024) (citing *Dyer*, 395 F.3d at 1210); *Jamison v. Bowen*, 814 F.2d 585, 590 (11th Cir. 1987)).

  **C.**  **The SSA's Sequential Evaluation for Disability Claims**

  To be eligible for DIB, a claimant must meet the disability criteria outlined in the Act. *See* 42 U.S.C. § 423(a)(1)(E), (d). Claimants over the age of 18 are "considered to be disabled" if they are "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *See id.* § 1382c(a)(3)(A). When determining a claimant's eligibility for DIB, the ALJ employs a "five-step sequential evaluation." *See* 20 C.F.R. § 404.1520(a)(4). If the ALJ "can find that" a claimant is "disabled or not disabled at a step," he or she makes her "determination or decision and" does "not go on to the next step." *See id.* But if the ALJ "cannot find that" a claimant is "disabled or not disabled at a step," then the ALJ goes "on to the next step." *See id.*

At the ***first step***, the ALJ considers a claimant's "work activity, if any." *Id.* § 404.1520(a)(4)(i). If the claimant is "doing substantial gainful activity," the ALJ will find the claimant is "not disabled." *Id.*; *see also id.* § 404.1520(b) ("If you are working and the work you are doing is substantial gainful activity, we will find that you are not disabled regardless of your medical condition or your age, education, and work experience.").

If the claimant is not engaged in substantial gainful activity, then the ALJ must go on to step two. At the ***second step***, the ALJ considers "the medical severity" of a claimant's "impairment(s)." *Id.* § 404.1520(a)(4)(ii). An "impairment or combination of impairments" is severe if it "significantly limits" a claimant's "physical or mental ability to do basic work activities." *See id.* § 404.1520(c). When making this determination, the ALJ does not consider a claimant's "age, education, and work experience." *Id.* If a claimant does not have "a severe medically determinable physical or mental impairment" or "combination of impairments" that either "is expected to result in death" or has lasted or is "expected to last for a continuous period of at least 12 months," the ALJ will find the claimant is "not disabled." *See id.* § 404.1520(a)(4)(ii); *id.* § 404.1509 (labelling the requirement that an impairment be expected to result in death or have lasted/be expected to last for a continuous period of at least 12 months the "duration requirement"). "However, it is possible for" a claimant "to have a period of disability for a time in the past even" if he does not "have a severe impairment" at the time of the ALJ's evaluation. *See id.* § 404.1520(c).

If the ALJ concludes that a claimant has a severe impairment, then the ALJ moves on to step three. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004), *superseded on other grounds by* 20 C.F.R. § 404.1520c. At the ***third step***, the ALJ again considers the medical severity of a claimant's impairments. *See* 20 C.F.R. § 404.1520(a)(4)(iii). This time, the ALJ evaluates

whether a claimant's severe impairment "meets or equals" an impairment is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See id.*; *Phillips*, 357 F.3d at 1238. If a claimant has "an impairment(s) which meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s)," the ALJ will find the claimant "disabled without considering" his "age, education, and work experience." *See* 20 C.F.R. § 404.1520(d). As the Eleventh Circuit and the Supreme Court have explained, "the idea is that the listings 'streamline the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background.'" *Phillips*, 357 F.3d at 1238 (alteration adopted, quoting *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987)).

If a claimant's impairment does not meet or equal an impairment listed in Appendix 1, then the ALJ moves on to step four. *See* 20 C.F.R. § 404.1520(e). At the ***fourth step***, the ALJ "will assess and make a finding about" the claimant's "residual functional capacity" ("RFC") "based on all the relevant medical and other evidence in" the claimant's "case record." *Id.*; *see also id.* § 404.1520(a)(4)(iv). A claimant's RFC "is the most" the claimant "can still do" in a "work setting . . . despite" the "physical and mental limitations" caused by the claimant's "impairment(s), and any related symptoms, such as pain."[4] *See* 20 C.F.R. § 404.1545(a)(1). The ALJ uses the RFC

---

[4] In making the RFC determination, the ALJ "will consider all of" a claimant's "medically determinable impairments of which" she is "aware, including . . . medically determinable impairments that are not severe." *See* 20 C.F.R. § 404.1545(a)(2). The ALJ will also consider the "total limiting effects" of all the claimant's "impairment(s) and any related symptoms," because "[p]ain or other symptoms may cause a limitation of function beyond that which can be determined on the basis of the anatomical, physiological or psychological abnormalities considered alone." *See id.* § 404.1545(e). "In general," a claimant is "responsible for providing the evidence" the ALJ "will use to make a finding about" his RFC. *See id.* § 404.1545(a)(3). But before the ALJ determines a claimant is not disabled, the ALJ is "responsible for developing" the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help" the claimant "get medical reports from" the claimant's "own medical sources." *Id.* The ALJ "will consider any statements about what" the claimant "can still do that have been provided by medical sources, whether or not they are based on formal medical examinations" and "will also consider descriptions and observations of" a claimant's "limitations from her impairments, "including limitations that result from" the claimant's "symptoms, such as pain, provided by" the claimant or her "family, neighbors, friends, or other persons." *Id.* With these details, the

assessment "to determine if" the claimant can do her "past relevant work." *See id.* § 404.1520(e). The ALJ does this by comparing the RFC assessment "with the physical and mental demands of" a claimant's "past relevant work." *See id.* § 404.1520(f). If a claimant "can still do this kind of work," the ALJ will find the claimant is "not disabled." *See id.*

If the ALJ concludes a claimant cannot do his past relevant work because he has a severe impairment, or if a claimant does "not have any past relevant work," then the ALJ moves on to step five. *See id.* §§ 404.1520(g)(1), 404.1560(c). At the ***fifth step***, the ALJ considers the claimant's RFC "together with" his "age, education, and work experience" — that is, his "vocational factors" — to "see if" he "can make an adjustment to other work." *See id.* § 404.1520(a)(4)(v), (g)(1). "At step five the burden of going forward shifts to the [Commissioner] to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quotation marks omitted). If the Commissioner points to possible alternative employment, then the burden returns to the claimant to prove an inability to perform those jobs. *Id.* If the claimant "can make an adjustment to other work," the ALJ will find the claimant "not disabled." *See* 20 C.F.R. § 404.1520(a)(4)(v), (g)(1). But if the claimant "cannot make an adjustment to other work," the ALJ will find the claimant is "disabled." *See id.* § 404.1520(a)(4)(v), (g)(1).

## III.   THE ALJ'S DECISION

On October 24, 2023, ALJ Gracian A. Celaya (the "ALJ") entered a partially favorable decision, finding Plaintiff: (1) "meets the insured status requirements of the Social Security Act

---

ALJ evaluates a claimant's "ability to meet the physical, mental, sensory, and other requirements of work." *See id.* § 404.1545(a)(4), (b)–(d) (describing how the ALJ assesses a claimant's physical, mental, and other abilities).

through March 31, 2024[;]" and (2) "became disabled on [August 6, 2023] and has continued to be disabled through the date of this decision." *See* ECF No. [11] at 29, 37.  In reaching this conclusion, the ALJ employed the SSA's five-step sequential evaluation outlined above.

At ***step one***, the ALJ concluded that Plaintiff had "not engaged in substantial gainful activity since March 23, 2020, the alleged onset date[.]" *Id.* at 30 (citation omitted).  At ***step two***, the ALJ concluded that Plaintiff has the following severe impairments: MS and depressive, bipolar and related disorders.  *Id.* (citing 20 C.F.R. § 404.1520(c)).

At ***step three***, the ALJ concluded that Plaintiff's impairments, or combination thereof, failed to meet or medically equal the criteria listed in Appendix 1 of the Regulations.  *See id.* at 31.  In making this finding, the ALJ considered "all of the medical listings," including the listings that most closely aligned with Plaintiff's alleged impairments, which included listings 11.00 (neurological disorders), 11.09 (multiple sclerosis), 12.04 (depressive, bipolar and related disorders), and 12.06 (anxiety and obsessive-compulsive disorders).  *Id*.  As to Plaintiff's physical impairments regarding the 11.00 and 11.09 listings, the ALJ found that Plaintiff does not have the required disorganization of motor function in two extremities causing an extreme limitation in standing up, balancing while standing or walking, or using the upper extremities.  *Id*.  The ALJ also found Plaintiff does not have marked limitations in both physical and mental functioning, and that no treating or examining source documented objective findings that meet or medically equal any listed impairment.  *Id*.

As to Plaintiff's mental impairments, the ALJ found that before August 6, 2023, the severity of Plaintiff's mental impairments does not meet or medically equal the criteria of listings 12.04 or 12.06.  *Id*.  In making this finding, the ALJ considered the "paragraph B" criteria and found that, prior to the established onset date, Plaintiff had moderate limitations in each of the four paragraph

B functional areas.  The ALJ found Plaintiff had a moderate limitation in understanding, remembering, or applying information, relying on mental status examinations showing intact recent and remote memory and an appropriate fund of knowledge, Plaintiff's ability to provide historical information to treating providers, and activities such as driving and shopping online.  *Id*. The ALJ found Plaintiff had a moderate limitation in interacting with others, citing Plaintiff's report that he spends time with others and treatment notes describing him as alert and oriented with intact language and clear speech, as well as records noting he was cooperative and not in distress.  *Id*.  The ALJ found Plaintiff had a moderate limitation in concentrating, persisting, or maintaining pace; acknowledging Plaintiff's complaints of fatigue and reports that he needs encouragement or help completing tasks, but emphasizing mental status findings of normal attention span and ability to concentrate and Plaintiff's ability to drive and manage finances by paying bills, counting change, and using banking accounts.  *Id*.  The ALJ found Plaintiff had a moderate limitation in adapting or managing oneself, relying on Plaintiff's report that he can prepare his own meals and generally normal exam findings showing he was alert and oriented with intact judgment and insight.  *Id*. at 32.  As to the "paragraph C" criteria, the ALJ found Plaintiff did not meet it because, although his mental impairments lasted more than two years and he received outpatient therapy, the record did not show "marginal adjustment."  *Id*.  The ALJ relied on evidence that Plaintiff remained independent in daily activities and could provide information to treating providers, indicating more than a minimal ability to adapt to everyday changes.  *Id*.

Because Plaintiff's impairments did not meet or equal any of the Listings in Appendix 1 of the Regulations, the ALJ proceeded to ***step four*** of the SSA's five-step sequential analysis and found that, since March 23, 2020, Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 CFR § 404.1567(a) but with a few exertional and

nonexertional limitations. *Id*. at 32-33. Specifically, the ALJ found that Plaintiff could occasionally crouch, stoop, and balance and also frequently handle, finger, and feel with the nondominant hand. *Id*. at 32. The ALJ found that Plaintiff can never kneel, crawl, climb ramps, stairs, ladders, ropes, or scaffolds (can never be exposed to unprotected heights or hazards), or operate foot controls with the left leg. *See id*. The ALJ also noted that Plaintiff ambulates with a cane and that Plaintiff can follow simple instructions, frequently interact with coworkers, supervisors, and the public, and concentrate in two-hour increments. *Id*. In making these findings, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p." *Id*.

In evaluating the RFC, the ALJ explained the two-step symptom-evaluation framework to determine: (1) whether there is an underlying medically determinable physical and/or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms; and (2) the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities. *Id*. at 32-33. The ALJ first considered Plaintiff's testimony regarding his fatigue, imbalance, cane use, numbness in the soles of his feet, inability to squat or kneel, and five-pound lifting/carrying estimate, finding that the medically determinable impairments could reasonably cause the alleged symptoms; but Plaintiff's statements about their intensity, persistence, and limiting effects were not fully supported before the established onset date. *Id*. at 33. The ALJ reviewed the historical and longitudinal records reflecting diagnoses including hypertension, hyperglycemia, hyperlipidemia, and MS. *See id*.

As to the historical physical impairments, the ALJ noted treatment records showing left lower-extremity weakness and spasticity that worsened and interfered with walking. *Id*. The ALJ

emphasized that strength was generally 5/5 throughout except for mildly reduced left-leg strength, that lower-extremity weakness was intermittent but ongoing. *Id*. The ALJ also cited repeated findings of normal upper-extremity range of motion and strength and intact fine motor movement, along with exam findings such as downgrading plantar responses, mild difficulty with tandem walking, inability to run, and limited hopping ability on the left leg compared with the right. *Id*. The ALJ noted Plaintiff used a cane for safety and received MS infusions every six months. *Id*. The historical mental evaluations show consistent documentation of Plaintiff being alert with intact memory and normal attention and concentration. *Id*. The ALJ also specifically discussed the March 2021 consultative examination performed by Pierre-Ricard Edouard, M.D., noting clinical findings of 5/5 grip strength bilaterally and normal fine manipulation, including the ability to button a shirt and turn a doorknob, and normal straight-leg raising. *Id*. The evaluation showed Plaintiff's inability to walk on heels and toes, abnormal gait, and the use of a medically necessary cane. *Id*.

In assessing intensity, persistence, and limiting effects of his symptoms, the ALJ concluded that while the record documented MS-related functional limits — particularly involving the left lower extremity and the need for a cane — the record did not show the level of severity required for disability before the established onset date, and did not reflect significant upper-extremity impairment. *Id*. Specifically, he ALJ noted that Plaintiff can stand up from a seated position, balance while standing or walking, and use the upper extremities. *Id*. The ALJ acknowledged fatigue but found it consistent with limiting Plaintiff to a reduced range of sedentary work, and addressed psychological complaints by noting that examinations generally described Plaintiff as cooperative, fully oriented, calm, and making good eye contact, with no evidence of impaired memory, attention span, or concentration. *Id*. at 33-34.

More specifically as to the psychological limitations, the ALJ noted Plaintiff's allegation that they are considerable, and he experiences fatigue, anxiety, and depression, but the ALJ found the evidence did not support this.  *Id*. at 34.  The ALJ stated that the evidence shows that Plaintiff can carry out simple instructions, frequently interact, and can concentrate for two-hour spans.  *Id*. The ALJ found that Plaintiff's own statements about his daily activities and the medical evidence did not support a more restrictive finding based on, *inter alia*, limited evidence of regular specialized mental-health treatment and activities, such as driving, supporting the adopted mental limitations.  *Id*.

Turning to opinion evidence, the ALJ found the State agency medical consultants' initial and reconsideration assessments (light exertion with postural and hazard limitations) not persuasive because the evidence supported greater limitations given gait abnormalities and left-leg weakness.  *Id*.  The ALJ explained that Dr. Edouard did not provide vocationally quantified functional limits but that the consultative exam findings — especially the abnormal gait and medically necessary cane — were accounted for to the extent consistent with the overall record. *Id*.  The ALJ found treating neurologist Dr. Horstmyer's January 2023 medical statement generally unpersuasive because, although MS supported sedentary-level limitations, the degree of limitation Dr. Horstmyer assigned (including that Plaintiff could not work any hours in a day, had very limited standing tolerance, could lift only five pounds occasionally, and could never use either arm to work) was characterized as "overly dire, inconsistent with the overall record, and inconsistent with [Dr. Horstmyer's] own [treatment] notes[.]"  *Id*.  The ALJ summarized Dr. Horstmyer's treatment notes as showing mild tandem-walk difficulty and inability to run but had intact motor skills and full strength except for the left leg.  *Id*.  The ALJ also found Maribel Aguilera, M.D.'s opinion that Plaintiff had poor ability to make occupational/performance and personal/social adjustments due

to impaired social and cognitive functioning unpersuasive as inconsistent with the record given mental status findings showing intact mental status, preserved judgment and insight, and normal alertness and orientation despite a history of mood disorder and anxiety. *Id*. at 34-35. The ALJ concluded that the RFC represented the most Plaintiff could do on a regular and continuing basis because the record only partially supported the alleged intensity, persistence, and limiting effects of symptoms. *Id*. at 35.

As to past relevant work, the ALJ found that, since March 23, 2020, Plaintiff could not perform any past relevant work. *See id*. The ALJ identified Plaintiff's past work as driver, maintenance-mechanic helper, and machine packager, and — relying on the vocational expert's testimony — found Plaintiff could not perform any of this past work as actually or generally performed. *See id*.

Finding that Plaintiff's RFC limitations did not preclude all employment but did preclude past relevant work, the ALJ proceeded to ***step five*** of the SSA's five-step sequential analysis. *See id*. at 36. Under this step, the ALJ found that, prior to the established onset date, Plaintiff was a younger individual (age 45–49), but that on August 6, 2023, Plaintiff's age category changed to an individual closely approaching advanced age. *See id*. The ALJ found Plaintiff had at least a high school education and explained that transferability of job skills was not material before August 6, 2023 under the Medical-Vocational Rules, and that after the age-category change, Plaintiff had no transferable skills because he was limited to simple, unskilled work. *See id*. at 36-37. Relying on the testimony of a vocational expert, the ALJ determined that, prior to August 6, 2023, there were jobs existing in significant numbers in the national economy that Plaintiff could perform, including table worker and lens inserter. *See id*. at 36-37. The ALJ also confirmed that the vocational expert's testimony was consistent with the Dictionary of Occupational Titles and found Plaintiff

could make a successful adjustment to other work.  *See id.* at 37.  Accordingly, applying the Medical-Vocational Guidelines as a framework, the ALJ found Plaintiff "not disabled" prior to August 6, 2023.  *See id.*  Beginning on August 6, 2023, however, the ALJ found that there were no jobs existing in significant numbers in the national economy that Plaintiff could perform and concluded Plaintiff was disabled by direct application of Medical-Vocational Rule 201.14.  *See id.*

## IV.    DISCUSSION

Plaintiff's Motion for Summary Judgment presents two related arguments: (1) whether the ALJ properly evaluated Dr. Horstmyer's January 2023 medical statement, under 20 C.F.R. § 404.1520c; and (2) whether substantial evidence supports the resulting RFC finding.  *See* ECF No. [12] at 3, 11.  Defendant argues that the ALJ applied the correct legal standards, adequately articulated the supportability and consistency of Dr. Horstmyer's opinion, and that substantial evidence supports the RFC and the finding of no disability prior to August 6, 2023.  *See* ECF No. [15] at 5–11.  The Court addresses each argument in turn.

### A.   <u>The ALJ's Assessment of Dr. Horstmyer's Opinion</u>

Plaintiff challenges the ALJ's evaluation of Dr. Horstmyer's January 2023 medical statement (Ex. 19F) under § 404.1520c, arguing the ALJ's rationale was conclusory and did not meaningfully articulate either supportability or consistency.  *See* ECF No. [12] at 3.  The Court disagrees.  While the ALJ's discussion of Dr. Horstmyer's medical statement is brief, it is not opaque; the ALJ identified: (1) what limitations Dr. Horstmyer imposed; (2) the evidentiary benchmarks the ALJ found inconsistent with those limitations; and (3) the specific internal treatment-note findings the ALJ found did not support the extreme degree of restriction.  *See* ECF No. [11] at 34.

Starting with the transcript of evidence, the Court notes that it includes Dr. Horstmyer's treatment records from several treatment dates, including:

- April 15, 2019 (Ex. 5F), *see id*. at 399;
- June 2, 2020 (Exs. 5F and 9F), *see id*. at 385;
- October 2, 2020 (Exs. 5F and 9F), *see id*. at 388;
- January 8, 2021 (Ex. 9F), *see id*. at 427;
- June 21, 2021 (Exs. 5F and 12F), *see id*. at 391;
- August 10, 2021 (Exs. 5F and 9F), *see id*. at 397;
- November 9, 2021 (Exs. 5F and 15F), *see id*. at 394;
- April 8, 2022 (Ex. 21F), *see id*. at 583;
- October 28, 2022 (Ex. 21F), *see id*. at 585; and
- January 27, 2023 (Ex. 21F), *see id*. at 589.[5]

Beyond the treatment records and the medical statement, the transcript also includes Dr. Horstmyer's progress notes from June 14, 2023 (Ex. 24F).  *See id*. at 599.  As to Dr. Horstmyer's medical statement (Ex. 19F), *see id*. at 575-76, the ALJ found it unpersuasive.  *See id*. at 34.  The ALJ stated:

> Dr. Horstmyer opined that the claimant cannot work or stand for any hours in a work day, limited to standing 15 minutes at one time, lift 5 pounds occasionally, and can never use his left or right arm to work (Ex. 19F).  This opinion is generally unpersuasive.  Although the claimant's impairments give rise to sedentary exertional limitations, the degree of limitations assigned in this opinion are overly dire, inconsistent with the overall record, and inconsistent with treating source's own notes (*see e.g.* Ex. 5F; 9F; 15F; 24F).  Treatment notes show the claimant had mild difficulty with tandem walking and was unable to run, but had intact motor skills and 5/5 strength throughout, except for his left leg (Ex. 5F).

*See id*.

To recap, an ALJ must evaluate the persuasiveness of medical opinions by addressing the two "most important" factors — supportability and consistency — and must articulate how those

---

[5] Several of the appointments have duplicative entries, including: June 2, 2020, October 2, 2020, and August 10, 2021, which are referenced in Exs. 5F and 9F; June 21, 2021, referenced in Exs. 5F and 12F; and November 9, 2021, referenced in Exs. 5F and 15F.  The following treatment dates do not have duplicative references but are listing here for ease of reference: April 15, 2019 (Ex. 5F), January 8, 2021 (Ex. 9F), April 8, 2022 (Ex. 21F); October 28, 2022 (Ex. 21F), and January 27, 2023 (Ex. 21F).

factors were considered.  20 C.F.R. § 404.1520c(b)(2), (c)(1)–(2).  Under *Winschel*, 631 F.3d at 1178, an ALJ must provide enough clarity to permit meaningful review.  Further, the Eleventh Circuit states that the ALJ's "failure . . . to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal" in its own right.  *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1269 (11th Cir. 2019) (quoting *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)).  Supportability refers to how relevant "the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s)" — the "more relevant" they are, the "more persuasive" they will be. *Id.* § 404.1520c(c)(1).  Objective medical evidence is "medical signs, laboratory findings, or both[.]"  *Id.* §§ 404.1513(a)(1), 404.1502(f).  And consistency refers to how consistent "a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim" — the "more consistent" they are, the "more persuasive" they will be. *Id.* § 404.1520c(c)(2).  After carefully reviewing the ALJ's decision and the record in this case, the Court finds that the ALJ sufficiently applied the supportability and consistency factors.

Starting with the supportability factor, the ALJ summarized Dr. Horstmyer's medical statement as opining, among other things, that Plaintiff could not work any hours in a day, could not stand any hours in a day, could lift only five pounds occasionally, and "can never use his left or right arm to work."  *See* ECF No. [11] at 575, 34.  The ALJ then explained why Dr. Horstmyer's own clinical documentation did not support the opinion, citing to Ex. 5F, 9F, 15F, and 24F and stating that the degree of limitations was "overly dire" and "inconsistent with treating source's own notes," and pointing to particular findings from those notes: only "mild difficulty with tandem walking" and inability to run, alongside "intact motor skills and 5/5 strength throughout, except

17

for his left leg." *See id*. at 34. The most extreme portions of Dr. Horstmyer's opinion are not merely "sedentary-level" restrictions; they include the bilateral upper-extremity prohibition ("never use" either arm for work) and the assertion that Plaintiff could not work any hours. *See id*. at 575. In assessing supportability, the ALJ did not simply label the opinion "unsupported;" the ALJ cited to Dr. Horstmyer's treatment records and identified a mismatch between: (a) Dr. Horstmyer's own objective findings documenting intact motor skills and full strength except in the left leg; and (b) an opinion that eliminates the functional use of either arm. *See id*. at 34.

That explanation speaks to supportability in a reviewable way, which is all that is required. *See* 20 C.F.R. § 404.1520c. Because the cited internal findings (intact motor skills; 5/5 strength except left leg) are logically tethered to the particular disputed restriction (no use of either arm), the Court can discern "how" the ALJ evaluated Dr. Horstmyer's supportability — *i.e.*, by comparing the opinion's asserted severity to the objective findings reflected in the source's own examinations. *See Winschel*, 631 F.3d at 1178 (requiring enough explanation to permit meaningful review).

Plaintiff argues that "mild difficulty with tandem walking" and inability to run could be consistent with MS-related gait limitations and therefore do not undermine Dr. Horstmyer's conclusions. *See* ECF No. [12] at 5. But that point does not address the ALJ's actual supportability rationale. The ALJ did not rely on the tandem-walk finding to reject gait-related limitations; the ALJ relied on the intact motor skills/strength findings to reject the *extent* of the limitations Dr. Horstmyer imposed — especially the bilateral upper-extremity restriction. In other words, the cited findings are probative not because they show Plaintiff has no MS symptoms, but because they do not support the opinion's "overly dire" functional endpoint with respect to arm use and total inability to work. Plaintiff also argues that the ALJ's decision lacks clarity as to how "intact

motor skills and 5/5 strength throughout, except for his left leg" fails to support Dr. Horstmyer's opinion. *See id*. at 6. This argument fails because the ALJ did not rely on "intact motor skills and 5/5 strength" to suggest Plaintiff had no impairment; the ALJ relied on those findings to explain why Dr. Horstmyer's own objective examinations did not support his *extreme* restrictions — particularly the assertion that Plaintiff could never use either arm for work and could not work any hours in a day. In other words, the ALJ drew a rational link between the degree of limitation Dr. Horstmyer endorsed and the clinical findings Dr. Horstmyer documented, concluding the opinion was "overly dire" when compared to largely normal strength and motor functioning outside the left leg. And while Plaintiff argues Dr. Horstmyer's opinion addressed sustained 40-hour-workweek functioning, § 404.1520c does not require the ALJ to accept that framing; it requires the ALJ to explain supportability and consistency, which the ALJ did by identifying the internal exam findings and citing record evidence that did not corroborate limitations of that magnitude. Finally, the fact that the ALJ's discussion was concise does not make it legally insufficient where, as here, the ALJ cited the relevant exhibits and identified the specific findings viewed as inconsistent with Dr. Horstmyer's most extreme limitations, allowing the Court to follow the reasoning without reweighing the evidence.

As to the consistency factor, although the ALJ did not restate every conflicting record in the same paragraph, the decision's immediately preceding and subsequent discussion supplies the concrete "other evidence" that the ALJ plainly invoked when referencing inconsistency with the overall record. *See* ECF No. [11] at 31-35. Specifically, in the narrative summary of the longitudinal evidence citing multiple exhibits beyond Dr. Horstmyer's own notes, the ALJ repeatedly distinguished between: (1) lower-extremity MS limitations affecting gait/ambulation; and (2) preserved upper-extremity strength and fine motor functioning. *See id*. The ALJ stated

that strength was "usually 5/5 throughout" except for the left lower extremity, that Plaintiff had "normal range of motion and strength in his upper extremity," and that fine motor movement was intact across multiple examinations. *See id*. at 33. The ALJ further stated that, although Plaintiff used a cane and had left-leg weakness affecting walking, "the record does not detail an impairment of the upper extremity." *See id*. That evidence directly conflicts with Dr. Horstmyer's opinion that Plaintiff could never use either arm for work. The ALJ also discussed consultative examiner Dr. Edouard's physical exam findings — normal grip strength, normal fine manipulation (including buttoning a shirt and turning a doorknob), abnormal gait, and the need for a cane — and stated those clinical findings were accounted for to the extent consistent with the overall record. *See id*. These findings are consistent with limited ambulation (and support the cane-related limitations the ALJ incorporated), but they again cut against a bilateral no-arm-use restriction.

This is the type of articulation courts have found sufficient even when the ALJ does not provide an exhaustive list of examples in the specific opinion paragraph, so long as the decision explains why the opinion conflicts with identified clinical findings and record evidence. *See Raper*, 89 F.4th at 1275 ("'[I]t is proper to read the ALJ's decision as a whole, and . . . it would be a needless formality to have the ALJ repeat substantially similar factual analyses[.]'") (quoting *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004)); *Garcia v. Kijakazi*, No. 21-CV-22879, 2023 WL 1820984, at *8 (S.D. Fla. Jan. 9, 2023), *report and recommendation adopted*, No. 21-CV-22879, 2023 WL 1816387 (S.D. Fla. Feb. 8, 2023), *aff'd sub nom. Garcia v. Comm'r, Soc. Sec. Admin.*, No. 23-CV-11184, 2023 WL 7404856 (11th Cir. Nov. 9, 2023) (explaining that even though the ALJ failed "to provide specific examples to support his inconsistency finding, the ALJ did in fact explain why [the doctor's] opinion was inconsistent with her treatment notes (because the notes reflect improvement with treatment) and why it was inconsistent with the mental status

exams (because the mental status reports contained largely unremarkable findings).").   Put differently, the ALJ's statement that Dr. Horstmyer's degree of limitation was inconsistent with the "overall record" is not a free-floating conclusion; it is anchored to the ALJ's just-stated discussion that Plaintiff's deficits were primarily in the left lower extremity, while upper-extremity strength and fine manipulation were repeatedly normal.   Thus, the Court finds that the ALJ sufficiently addressed the consistency factor as it relates to Dr. Horstmyer's opinion.

   B. **Substantial Evidence Supports the ALJ's RFC Conclusion**

      Applying the deferential standard of review, the Court asks only whether the ALJ applied the correct legal standards and whether substantial evidence — "more than a scintilla, but less than a preponderance" — supports the findings  that a reasonable person would accept as adequate.  *See Biestek*, 587 U.S. at 104; *see Hale*, 831 F.2d at 1011; *Dyer*, 395 F.3d at 1210.  The Court may not reweigh the evidence or substitute its judgment for the ALJ's.  *See Winschel*, 631 F.3d at 1178; *Bloodsworth*, 703 F.2d at 1239.  "Remand is unwarranted unless an error creates fundamental unfairness or prejudice."  *Raper*, 89 F.4th at 1274 (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (describing the ALJ's errors as "harmless" because they were "irrelevant" to the ALJ's analysis of the relevant factors)).  An improper finding can "be harmless if the ALJ nevertheless proceeded in the sequential evaluation, duly considered [the claimant's] mental impairment when assessing his RFC, and reached conclusions about [the claimant's] mental capabilities supported by substantial evidence."  *Schink*, 935 F.3d at 1268.  Plaintiff argues that substantial evidence does not support the ALJ's evaluation of Dr. Horstmyer's opinions because the ALJ allegedly cited only benign findings and excluded clinically significant findings that would support Dr. Horstmyer's assessed limitations.  *See* ECF No. [12] at 6.  Plaintiff further argues that the RFC is necessarily deficient because it is not consistent with the medical evidence of record

and because the ALJ did not adequately address or explain the asserted discrepancies after rejecting Dr. Horstmyer's opinion.  *See id*. at 11-12.

These arguments do not warrant reversal.  Substantial-evidence review does not permit the Court to reweigh the record or decide the facts anew; the question is whether the ALJ identified record-based reasons that a reasonable mind could accept as adequate to support the findings made. *See Biestek*, 587 U.S. at 104; *see Hale*, 831 F.2d at 1011; *Dyer*, 395 F.3d at 1210.  Where the ALJ acknowledges the impairment, incorporates meaningful limitations responsive to the supported portions of the record, and explains why the most extreme restrictions are unsupported or inconsistent, the decision will be affirmed even if the record could also support a more restrictive finding.

Plaintiff's first argument — that the ALJ "excluded" significant findings supporting Dr. Horstmyer — fails because the decision reflects the ALJ did not ignore Plaintiff's MS-related symptoms or functional deficits.  *See* ECF No. [11] at 31-35.  The ALJ expressly credited MS as a severe impairment and adopted an RFC that includes significant restrictions tailored to the symptoms Plaintiff emphasizes, including sedentary exertion, substantial postural and environmental restrictions, and the requirement to ambulate with a cane.  *See id*.  The ALJ's narrative discussion also acknowledged gait abnormality and left lower-extremity weakness, and it cited evidence reflecting ongoing neurological complaints and treatment for MS.  *See id*.  The dispositive point, however, is that the ALJ's disagreement with Dr. Horstmyer was not a rejection of the existence of MS-related limitations; it was a rejection of the *degree* of limitation Dr. Horstmyer endorsed — particularly the most extreme components of the medical statement.  *See id*. at 34.  An ALJ does not commit reversible error merely because the decision does not recite every abnormal finding in the record, so long as the reasoning shows the ALJ considered the

condition as a whole and provides sufficient explanation to allow meaningful review.  *Raper*, 89 F.4th at 1277 ("The ALJ need not discuss every piece of evidence if the ALJ's decision is not a broad rejection and there is enough for us to conclude that the ALJ considered the claimant's medical condition as a whole.") (citing *Dyer*, 395 F.3d at 1210; *Jamison*, 814 F.2d at 590).  Here, the ALJ tied the persuasiveness finding to specific clinical evidence and explained why those objective findings did not support Dr. Horstmyer's most restrictive conclusions.  That is the type of record-based explanation substantial-evidence review requires.  By pointing to evidence the ALJ did not consider when evaluating Dr. Horstmyer's opinion, Plaintiff is asking the Court to reweigh the evidence to conclude that the ALJ's finding was not supported.  The Court declines to do so as it would be contrary to its role on appeal.  *See Winschel*, 631 F.3d at 1178; *Dyer*, 395 F.3d at 1210 ("If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it."); *Bloodsworth*, 703 F.2d at 1239.

Plaintiff's second argument — that the RFC is necessarily deficient because it is not consistent with the medical evidence pursuant to SSR 96-8p and because the ALJ "effectively rejected" Dr. Horstmyer without adequate rationale — rests on the same premise as the first: that the ALJ's persuasiveness analysis lacked an adequate explanation.  *See* ECF No. [12] at 11-12.  As discussed above, the ALJ articulated supportability and consistency reasons for finding Dr. Horstmyer "generally unpersuasive" and adopted limitations supported by the evidence the ALJ credited.  *See* ECF No. [11] at 31-35.  Moreover, Plaintiff's SSR 96-8p critique does not establish reversible error because SSR 96-8p requires a narrative RFC discussion that reflects the claimant's maximum sustained work capability on a "regular and continuing basis" (8 hours per day, 5 days per week or equivalent) and explains how material inconsistencies were resolved, but it does not impose a rigid, mechanical script so long as the ALJ's reasoning is clear enough to permit

meaningful review. *See Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8P (S.S.A. July 2, 1996); *Freeman v. Astrue*, 220 F. App'x 957, 959–60 (11th Cir. 2007) (holding that, although the ALJ "could have been more specific and explicit" in the RFC findings, the ALJ complied with SSR 96-8p by considering the claimant's functional limitations and then expressing RFC in exertional terms, adequately describing the claimant's functional capacity). Here, the ALJ did what SSR 96-8p requires in substance: the decision explains why Plaintiff's symptoms were only "partially" consistent with the record prior to the established onset date, identifies the evidence the ALJ credited (including gait abnormality and cane use) and the evidence the ALJ found inconsistent with more extreme limitations (including repeated findings of preserved upper-extremity strength and fine manipulation), and then translated those findings into functional restrictions in the RFC (sedentary work; cane; postural/environmental limits; manipulative limits; simple instructions; interaction and concentration limits). *See* ECF No. [11] at 34. In other words, the RFC narrative ties the record evidence to work-related functions and reflects the ALJ's conclusion about what Plaintiff could do on a sustained basis, which is the core requirement of SSR 96-8p.

Nor does Plaintiff show that the RFC is "necessarily deficient" because it is not "compatible" with the persuasiveness finding regarding Dr. Horstmyer's opinion. The premise of that argument is that the ALJ "effectively rejected" Dr. Horstmyer without sufficient rationale; but where the ALJ adequately articulates supportability and consistency reasons for finding a medical opinion unpersuasive, SSR 96-8p does not require the RFC to mirror the rejected opinion. Instead, it requires the ALJ to assess the claimant's maximum sustained functioning based on the record as a whole and to explain how conflicting evidence was resolved. *See* SSR 96-8p at 7. The ALJ's reconciliation is apparent: the decision accepted that MS imposed meaningful ambulatory limits

(hence sedentary work, cane use, and extensive postural restrictions), but it rejected the *degree* of limitation in Dr. Horstmyer's statement — particularly the bilateral "never use either arm" restriction and the assertion that Plaintiff could not work any hours — because Dr. Horstmyer's own exam findings did not support those extremes and they were inconsistent with other exam evidence showing preserved upper-extremity function.   That is a resolution of an asserted inconsistency, and it is the type of explanation SSR 96-8p contemplates.

Plaintiff's reliance on the "three hats" concept and the non-adversarial nature of Social Security hearings also does not change the outcome.   It is true that Social Security proceedings are informal and the ALJ has a duty to investigate the facts and develop the arguments for and against granting benefits.   *Sims v. Apfel*, 530 U.S. 103, 110–11 (2000).   But that duty does not relieve the claimant of the burden of proving disability or convert disagreement with how the ALJ weighed the evidence into a record-development error.   *See Hale*, 831 F.2d at 1011 ("The claimant bears a heavy burden in establishing the existence of a disability. She must first show that her impairment prevents her from performing her previous work.").   And to the extent Plaintiff reframes the issue as a failure to "fully and fairly develop" the record, the Eleventh Circuit requires a showing of prejudice, *i.e.*, that an evidentiary gap resulted in unfairness or clear prejudice.   *Brown v. Shalala*, 44 F.3d 931, 935–36 (11th Cir. 1995).   Plaintiff's argument, as presented, focuses on the ALJ's evaluation and explanation of existing evidence (especially Dr. Horstmyer's opinion), not on a concrete, prejudicial omission of evidence the ALJ failed to obtain or consider.

Finally, Plaintiff's "logical bridge" argument (citing *Henkel v. Comm'r of Soc. Sec. Admin.*) does not compel remand on this record.   *Henkel* is a district-court decision and does not supply a different governing standard than the Eleventh Circuit's requirement that the ALJ provide enough reasoning to permit meaningful review.   *See* 20-CV-14363, ECF No. [42] (S.D. Fla. June 6, 2022).

Here, the RFC narrative is traceable, the ALJ identified which symptoms and limitations were credited, which extreme limitations were rejected and why, and how those findings were incorporated into specific functional restrictions. That is sufficient to satisfy SSR 96-8p's narrative requirement and substantial-evidence review.

In sum, the Court concludes that substantial evidence supported the ALJ's decision. While Plaintiff argued that the ALJ should have considered other pieces of evidence in the record, the ALJ is not required to discuss every piece of evidence so long as the Court is able to conduct meaningful judicial review. *See Dyer*, 395 F.3d at 1211 ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision, as was not the case here, is not a broad rejection which is not enough to enable the district court or this Court to conclude that the ALJ considered her medical condition as a whole" (cleaned up)); 20 C.F.R. § 404.1520c(b)(1) ("Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record."). Because the Court finds the ALJ applied the correct legal standards and substantial evidence supports the decision for the period at issue, no remand is warranted. *See Raper*, 89 F.4th at 1274.

## V.      CONCLUSION

For the reasons explained above, I **RESPECTFULLY RECOMMEND** that Plaintiff's Motion for Summary Judgment, **ECF No. [12],** be **DENIED**; that the Commissioner's Motion for Summary Judgment, **ECF No. [15]**, be **GRANTED**; and that the Administrative Law Judge's Decision be **AFFIRMED**.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from the date

25-CV-20457-ALTMAN/Elfenbein

of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Roy K. Altman, United States District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**RESPECTFULLY SUBMITTED** in Chambers, in Miami, Florida, on January 23, 2026.

**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc:  All Counsel of Record